UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

WILLIE SEALS,

     Plaintiff,

  v.

FEDERAL EXPRESS CORPORATION,
successor to FedEx Ground Package System, Inc.,

     Defendant.

Case No. 25-cv-1914-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion of defendant Federal Express

Corporation ("FedEx") for summary judgment (Doc. 2).  Plaintiff Willie Seals has responded to

the motion (Doc. 8), and FedEx has replied to that response (Doc. 12).  At the Court's request,

the parties submitted supplemental briefing on caselaw from the Seventh Circuit (Docs 57 & 61).

The parties also filed and discussed supplemental authority (Docs. 62, 63, 78 & 81).  The Court

also considers various other pending motions (Docs. 40, 43, & 49).

## I.    Background

In August 2017, a group of drivers who worked delivering FedEx packages filed suit

under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19, in the District of

Massachusetts seeking unpaid overtime wages under § 7(a) of the FLSA, 29 U.S.C. § 207(a).

*Roy v. FedEx Ground Package Sys., Inc.*, No. 3:17-cv-30116 (D. Mass.).  In November 2018, the

*Roy* court limited the case to Massachusetts plaintiffs.  The non-Massachusetts plaintiffs then

filed suit in December 2018 in the Western District of Pennsylvania, the district where FedEx is

located.  *Claiborne v. FedEx Ground Package System, Inc.*, No. 2:18-cv-1698 (W.D. Pa.).  The

*Claiborne* court conditionally certified a collective action pursuant to § 16(b) of the FLSA, 29

U.S.C. § 216(b).  Seals opted into the collective on August 5, 2020.  The court then decertified the collective action and severed the individual claims of opt-in plaintiffs for transfer to appropriate districts throughout the country.

After the decertification, Seals's case was transferred to the United States District Court for the Southern District of Illinois because he lives in Belleville, Illinois, within the Southern District.  FedEx filed its motion for summary judgment in the Western District of Pennsylvania in January 2025, although it and its subsequent briefing on the motion did not make it to this Court's docket until October 2025.

The Second Amended Complaint (Doc. 37-1) asserts that Seals, a driver delivering FedEx packages through an independent service provider ("ISP"), was properly classified as a FedEx employee under the FLSA.  Seals asserts that he was entitled under § 7(a) of the FLSA to overtime compensation from FedEx for hours worked over 40 per week.  In its summary judgment motion, FedEx sidesteps the "employee" question and challenges Seals's ability to produce evidence that § 7(a) applied to him and that all of his claims fell within the statute of limitations.  It further seeks a legal determination of the proper method for damages calculation to the extent any claim survives its first two arguments.

The Court finds there are genuine issues of material fact regarding Seals's exemption from the FLSA's overtime pay requirements and the application of the statute of limitations, although it finds FedEx correct, as a matter of law, regarding the method of calculating any overtime pay due.  For this reason, with one exception, the Court will deny FedEx's motion for summary judgment.

## II.   Summary Judgment Standard

Summary judgment must be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).  The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.  Nevertheless, the "favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture."  *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (internal quotations and citations omitted).

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial.  *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013).  Where the nonmoving party carries the burden of proof at trial, the moving party may satisfy its burden of production in one of two ways.  It may present evidence that affirmatively negates an essential element of the nonmoving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the nonmoving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B).  *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169.  Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion.  *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists.  *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57;

*Modrowski*, 712 F.3d at 1168.  A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Rather, a genuine issue of material fact exists only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

### III.   Facts

There appears to be little dispute about the relevant facts and available evidence.  The dispute is primarily over burdens and inferences that can be drawn on summary judgment from that evidence.

FedEx, a corporation in the business of commercial package delivery, is registered as a motor carrier with the U.S. Department of Transportation and the Federal Motor Carrier Safety Administration.  Seals was employed to pick up and deliver packages for FedEx for two separate periods from October 2017 to February 2020 out of FedEx's Sauget, Illinois, facility.  He worked a total of 33 weeks during which he was paid $125.00 per day.

Seals was employed by two ISPs that contracted with FedEx to pick up and deliver packages sent through FedEx:  G Factor Transportation from October 11, 2017, to December 21, 2018, and Urbane Logistics from September 30, 2019, to February 2, 2020.  G Factor and Urbane owned some of the vehicles used by their drivers and rented others from commercial vehicle rental agencies.  FedEx did not own any of the vehicles.

On some work days, Seals drove delivery vehicles that had a gross vehicle weight rating ("GVWR") of over 10,000 pounds ("MCA vehicles"), but on other days he drove vehicles that had a GVWR of 10,000 pounds or less ("light vehicles" or "small vehicles").  Seals typically

4

sought out two specific vehicles to drive, but he did not know the GVWR of either.  When a vehicle owned by an ISP was not available, he drove a rented vehicle, but he did not know the GVWR of those vehicle either.  Evidence of the frequency with which he drove light vehicles is spotty, as described below.

FedEx obtained data about a driver's work from information the driver entered into a scanner, which FedEx calls "scanner data."  FedEx reviewed the scanner data to ensure compliance with Department of Transportation rules.  Each day a driver entered into the scanner information about, among other things, the vehicle number of the ISP's vehicle driven.  The vehicle number could be cross-referenced in FedEx's Vehicle Maintenance System to determine the GVWR of the particular vehicle if the ISP that owned the vehicle had entered that information in those records.  If it had not entered the information, FedEx did not have it.  The ISPs did not enter into FedEx's maintenance records information about vehicles they rented for drivers' use in transporting FedEx packages.  Additionally, errors in transcribing a vehicle number made tracking down its GVWR extremely difficult.

Seals drove 79 days for G-Factor and 56 days for Urbane.  The following chart represents the days for which FedEx has scanner data for the type of vehicle Seals drove.

| | Light vehicle days | MCA vehicle days | Unknown vehicle days | Total Days |
|---|---|---|---|---|
| **G Factor** | 2 (2.5%) | 19 (24.1%) | 58 (73.4%) | 79 (100%) |
| **Urbane** | 6 (10.7%) | 0 (0%) | 50 (89.3%) | 56 (100%) |
| **Total days** | 8 (5.9%) | 19 (14.1%) | 108 (80%) | 135 (100%) |

A substantial number of the days Seals drove vehicles of unknown GVWR he drove what he describes as vans or 12-foot box trucks rented by the ISP, possibly light vehicles.

The scanner data broken down by weeks shows that Seals drove a documented light vehicle in 4 weeks; in 3 of those weeks he was logged in as "on duty" for more than 40 hours.  It

5

further shows that Seals drove a documented light vehicle or one of the unknown GVWR in 32
of 33 weeks; in 22 of those weeks he was logged in for more than 40 hours.

|  | Light vehicle | Light or unknown vehicle | Total weeks |
|---|---|---|---|
| **Weeks worked** | 4 (12.1%) | 32 (97.0%) | 33 (100%) |
| **Weeks on duty >40 hours** | 3 (75.0%) | 22 (68.8%) | |

In the weeks Seals worked more than 40 hours, he was still paid $125.00 per day and was
not paid overtime wages.  He never complained to FedEx about not getting overtime.
Nevertheless, for all the years they employed Seals, G-Factor and Urbane certified to FedEx in
Annual Compliance Certifications that they had complied with all applicable laws, including
wage and hour laws like the FLSA.

Seals opted in to the *Claiborne* collective as a plaintiff on August 5, 2020.  In August
2021, the original plaintiffs plus the opt-in plaintiffs filed the First Amended Complaint adding
state law overtime claims (Doc. 4), and on July 24, 2024, they filed the Second Amended
Complaint (Doc. 37-1).  Seals did not bring a state law claim.

FedEx asks the Court for summary judgment on the grounds that Seals cannot show he
was subject to the FLSA's overtime requirements because he was subject to the Motor Carrier
Act ("MCA") Exemption.  It also argues that the two-year statute of limitations bars some of
Seals's claimed damages.  Seals argues that it is FedEx's burden to show an exception to the
MCA Exemption for light vehicles did not apply and that he is entitled to the three-year statute
of limitations for willful violations or equitable tolling of the limitations period.  Finally, the
parties dispute the appropriate method for calculating damages.

IV.    **Analysis**

As a preliminary matter, no party disputes that FedEx is a federal motor carrier engaged

6

in interstate commerce, that those driving to deliver its packages operate in interstate commerce and that, were it not for the dispute over the use of small vehicles, those drivers would be subject to the jurisdiction of the Secretary of Transportation under the MCA.  So all those preliminaries are taken as given.  The parties clash over whether Seals falls within an exception to an exemption from the FLSA's overtime pay requirements, whether Seals's claims are time barred in part, and the proper method for calculating damages, if there are any.

> A.      Entitlement to Overtime Pay

FedEx first argues that Seals cannot show he was owed overtime pay for any week he worked more than 40 hours.  It claims he fell under the MCA Exemption from the FLSA overtime pay requirement and not within the Small Vehicle Exception to that exemption.  The exemption and exception are described below.  FedEx notes that there are very few records of Seals's using a small vehicle.  It further argues that overtime eligibility is determined on a week-by-week basis, so even if there were weeks he drove small vehicles, he is not owed overtime for weeks he drove only MCA vehicles.

Seals contends that, after he shows he worked more than 40 hours without being paid overtime pay, it is FedEx's burden to show that the MCA Exemption applied, which includes the burden to show the Small Vehicle Exception does not apply.  Even if Seals bears the burden, he claims there are genuine issues of material fact about which kind of vehicles Seals drove for what length of time and whether his use of light vehicles was *de minimis*.  He argues that gaps in the scanner data's recording of vehicle GVWR cannot be viewed in FedEx's favor, so the Court must assume vehicles of unknown GVWR were light vehicles.

> 1.      Statutory Framework

A grasp of the statutory framework of the FLSA and the MCA is essential to

understanding this dispute.  Section 7(a) of the FLSA requires overtime pay for any employee who works more than 40 hours in a workweek.  29 U.S.C. § 207(a)(1).  The overtime pay must be "at a rate not less than one and one-half times the regular rate at which he is employed."  *Id.*

However, § 13(b) of the FLSA exempts from the overtime provisions "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49."  29 U.S.C. § 213(b)(1); *see Stingley v. Laci Transp. Inc.*, 172 F.4th 525, 528 (7th Cir. 2026); *Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 897 (7th Cir. 2009).  The statute cited in § 13(b)(1) is part of the MCA, so this exemption is often referred to as the MCA Exemption.[1]  That statute allows the Secretary of Transportation to "prescribe requirements for . . . qualifications and maximum hours of service of employees of . . . a motor carrier."  49 U.S.C. § 31502(b)(1).  FLSA regulations provide that the MCA Exemption applies only to employees who

> (1) Are employed by carriers whose transportation of passengers or property by motor vehicle is subject to his jurisdiction under section 204 of the Motor Carrier Act. . ., and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2(a).  Thus, generally, the Secretary may regulate the maximum hours of drivers employed by motor carriers, so they are not entitled to overtime under the FLSA.

However, the SAFETEA-LU Technical Corrections Act of 2008 ("TCA"), P.L. 110-244, June 6, 2008, 122 Stat 1572, clarified the MCA Exemption and defined the Small Vehicle Exception.  The TCA states that the FLSA overtime pay requirements apply to a "covered

---

[1] The rationale for MCA Exemption is safety.  "It is dangerous for drivers to spend too many hours behind the wheel, and a requirement of pay that is higher for overtime service than for regular service tends to . . . encourage employees to seek overtime work."  *Burlaka v. Contract Transp. Servs. LLC*, 971 F.3d 718, 719 (7th Cir. 2020) (internal quotations omitted).

8

employee" notwithstanding the MCA Exemption.  TCA § 306(a).  In turn, the TCA defined a

"covered employee" as an individual:

> (1) who is employed by a motor carrier. . .;
> (2) whose work, *in whole or in part*, is defined—
>       (A) as that of a driver. . .; and
>       (B) as affecting the safety of operation *of motor vehicles weighing 10,000
>       pounds or less* in transportation on public highways in interstate or foreign
>       commerce, [with inapplicable exceptions]; and
> (3) who *performs duties on motor vehicles weighing 10,000 pounds or less*.

TCA § 306(c) (emphasis added).

In sum, for this case it is enough to say that the FLSA requires overtime pay for drivers

employed by motor carriers who are "covered employees" under the TCA, that is, drivers who,

"in whole or in part," operate light vehicles.  If an employee is a "covered employee," he falls

within the Small Vehicle Exception to the MCA Exemption and is entitled to overtime pay under

§ 7(a) of the FLSA.

## 2.        Relevant Caselaw

In order to prove an FLSA claim for unpaid overtime wages, a plaintiff must prove that

he performed overtime work without being paid time-and-a-half wages and that he suffered

damages.  *Osborn v. JAB Mgmt. Servs., Inc.*, 126 F.4th 1250, 1256 (7th Cir. 2025).

If precise work records are not available to prove the extent of damages because the

employer did not keep accurate records as required by the FLSA, 29 U.S.C. § 211(c), the

employee may rely on a "just and reasonable inference" from evidence that he was improperly

compensated for *some* overtime work even if the evidence does not explicitly show the precise

amount and extent of that work.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687

(1946), *superseded on other grounds by* Portal-to-Portal Act of 1947, 29 U.S.C. § 254(c).  "The

just and reasonable inference standard applies to damages questions only *after* an employee has

met the initial burden to establish[] liability by showing that the employee performed uncompensated overtime work." *Osborn*, 126 F.4th at 1256 (internal quotations omitted).  The defendant can then provide evidence of the precise amount of work performed or the unreasonableness of the inference on which the plaintiff relies.  *Anderson*, 328 U.S. at 688.  If the defendant fails to produce such evidence, damages may be awarded even if they are only an approximation.  *Osborn*, 126 F.4th at 1256-57.

An employer claiming an employee is exempt from FLSA overtime pay requirements bears the burden of proving an exemption applies.  "The FLSA is a remedial act and exemptions from its coverage are to be narrowly construed against employers."  *Klein v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 990 F.2d 279, 282 (7th Cir. 1993) (citing *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392 (1960)); *accord Schaefer–LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 571 (7th Cir. 2012); *Johnson v. Hix Wrecker Serv., Inc.*, 651 F.3d 658, 660 (7th Cir. 2011).  Accordingly, "[t]he law places the burden on the employer to show that an exemption applies."  *E.M.D. Sales, Inc. v. Carrera*, 604 U.S. 45, 48 (2025); *accord Johnson*, 651 F.3d at 661 (citing *Klein,* 990 F.2d at 283).  That proof must be by a preponderance of the evidence.  *E.M.D. Sales*, 604 U.S.at 54.

And exemption is an all or nothing proposition:  "a motor carrier employee cannot be subject to the jurisdiction of both the Secretary of Labor and the Secretary of Transportation simultaneously."  *Johnson*, 651 F.3d at 661.  "Dividing jurisdiction over the same drivers, with the result that their employer would be regulated under the Motor Carrier Act when they were driving the big trucks and under the Fair Labor Standards Act when they were driving trucks that might weigh only a pound less, would require burdensome record-keeping, create confusion, and give rise to mistakes and disputes."  *Collins v. Heritage Wine Cellars, Ltd.*, 589 F.3d 895, 901 (7th Cir. 2009).

And although *Collins* concerned pre-TCA law, its rationale is consistent with the TCA's plain language that a "covered employee" includes one who works only "in part" with small vehicles, that is, a mixed fleet driver. *Schilling v. Schmidt Baking Co.*, 876 F.3d 596, 601 (4th Cir. 2017); *McMaster v. E. Armored Servs., Inc.*, 780 F.3d 167, 169-70 (3d Cir. 2015); *Frapanpina v. Garda CL Great Lakes, Inc.*, No. 19-cv-493, 2021 WL 1088302, at \*3 (N.D. Ill. Mar. 22, 2021) (collecting like-minded district court cases). It would, indeed, be unwieldy to have the Secretary of Transportation prescribe regulations for a driver part of the time and the Secretary of Labor for other times, possibly retrospectively based on events happening late in a workweek. One notable decision from the Northern District of Illinois agreed that dividing up jurisdiction between the two agencies even on a week-by-week basis would be overly burdensome. *Jamarillo v. Garda, Inc.*, No. 12 C 662, 2012 WL 4955932, \*4 (N.D. Ill. Oct. 17, 2012). However, it held—without addressing the "in whole or in part" language of the TCA— that an employee who drove an MCA vehicle a reasonable period of time was subject to the MCA Exemption. *Id.* \*5. Because *Jamarillo* essentially ignored the plain text of the TCA, the Court does not find it persuasive in that regard. *See Frapanpina,* 2021 WL 1088302, at \*4 (disagreeing with *Jamarillo* because it failed to follow TCA's plain text).

Nevertheless, courts have crafted a *de minimis* exception relating to drivers of mixed fleets. *Hinds v. FedEx Ground Package Sys., Inc.*, No. 18-CV-1431, 2020 WL 12048882, at \*6 (N.D. Cal. June 1, 2020). Indeed, earlier in this case, the District Court for the Western District of Pennsylvania held:

> There seems to be general consensus [among district courts] that in order [for the Small Vehicle Exception to apply], an employee must (1) perform some work that affects the safety of operation of small vehicles, and (2) it must be part of the employee's duties to [do] so, where some work must at least *rise above the level of de minimis work.* . . .

11

*Claiborne v. FedEx Ground Package Sys., Inc.*, No. 2:18-cv-1698, 2022 WL 4536999, at *4 (W.D. Pa. Sept. 28, 2022) (internal quotations omitted; emphasis added).  However, *de minimis* is not clearly defined by statutes, rules, or caselaw, although some courts have considered 1% to be the *de minimis* threshold.  *See, e.g., Oddo v. Bimbo Bakeries U.S.A., Inc.*, 391 F. Supp. 3d 466, 474 (E.D. Pa. 2019).

Some courts place the burden on the plaintiff to prove, as a matter of establishing the first element of his cause of action, that the Small Vehicle Exception to the MCA Exemption applies. *See, e.g., Carley v. Crest Pumping Techs., LLC*, 890 F.3d 576, 580 (5th Cir. 2018).  Other courts hold that the defendant has that burden when proving as an affirmative defense that the MCA Exemption applies.  *See, e.g., Wilkinson v. High Plains Inc.*, 297 F. Supp. 3d 988, 994 (D.N.D. 2018) (TCA does "not alter the burden which remains on the employer").  The Seventh Circuit Court of Appeals has not considered the issue.  Nevertheless, in light of the remedial nature of the FLSA and the Supreme Court's reminder that exemptions must be narrowly construed considering the terms and the spirit of the law, *Arnold* 361 U.S. at 392; *E.M.D. Sales*, 604 U.S. at 48, the Court believes the burden must lie with the defendant to show that the Small Vehicle Exception does not apply.

        3.     <u>Application</u>

There is sufficient evidence to lead a reasonable jury to conclude Seals performed work in excess of 40 hours in some weeks without getting paid overtime compensation.  Seals's testimony supports this fact, and, contrary to FedEx's belief, a plaintiff's own statement can overcome summary judgment even without corroborating evidence.  *See Payne v. Pauley*, 337 F.3d 767, 771 (7th Cir. 2003).  Cases that have made the statement that self-serving, uncorroborated, and conclusory affidavits are not sufficient to withstand summary judgment

have found the particular statements in issue insufficient not because they were self-serving but because they were not made on personal knowledge or were inadmissible for some other reason. *Id.* at 772.  In truth,

> [p]rovided that the evidence meets the usual requirements for evidence presented on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial—a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts.

*Id.* at 773.

Seals certainly has first-hand knowledge that he worked more than 40 hours in some weeks without getting paid overtime, and FedEx has not pointed to any evidence that would contradict such a statement.  In fact, the scanner data corroborates that Seals was logged in more than 40 hours in at least 22 weeks, and, although logged in times and work times may not perfectly correlate, a reasonable jury could conclude that the scanner data supports Seal's statement.  Seals's statement is therefore appropriate evidence for summary judgment.

It is true that Seals may have a hard time proving the specific dates and hours he worked overtime because, as noted above the scanner data is not perfect.  However, a reasonable jury could make a "just and reasonable inference" from Seals's testimony and the scanner data as to an approximation of his damages.  *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

Further, FedEx has not established that Seals was exempt from the FLSA's overtime pay requirements under the MCA Exemption.  As part of proving its entitlement to the exemption, it must show that Seals was not a "covered employee" under the TCA and therefore fell outside the Small Vehicle Exception.  However, because the evidence shows Seals drove a mixed fleet, doing work that "in whole or in part" affected the safe operation of small vehicles, a jury could

13

find he was a "covered employee" within the heartland of the Small Vehicle Exception.  Further, consistent with the policy articulated in *Collins*, Seals would not be subject to the jurisdiction of either the Secretary of Transportation or the Secretary of Labor on a week-by-week basis depending on whether, in retrospect, the vehicles he drove that week were light vehicles, MCA vehicles, or of unknown GVWR.  To do so would create an unwieldy recordkeeping burden for FedEx and the ISPs, which have already proved incapable of creating accurate vehicle weight records.  Based on the facts a reasonable jury could find, Seals would be covered by § 7 of the FLSA in all weeks he worked.[2]

Additionally, no reasonable jury could find that Seals's work on light vehicles was *de minimis* such that the court-created *de minimis* exception applies.  The scanner data shows Seals drove a documented light vehicle 8 of his 135 work days (5.9% of the days).  This is not *de minimis* under a reasonable understanding of the phrase.

Because there is evidence from which a reasonable jury could conclude that Seals worked more than 40 hours in some weeks without getting paid overtime compensation and that he was not exempt from the FLSA's overtime pay requirements under the MCA Exemption, FedEx is not entitled to summary judgment.[3]

---

[2] The Court will not limit this conclusion based on the particular facts within the limitations period.  It is untenable that the agency having jurisdiction over a worker could fluctuate based on the facts as they existed only during the limitations period and not the broader facts of the employment as a whole.

[3] In its argument, FedEx contends Seals is judicially estopped from asking the Court to assume vehicles of unknown GVWR should be considered light vehicles.  First, the Court need not make any such assumption where the evidence, even considering only documented light vehicles, could lead a reasonable jury to conclude that Seals is covered by the TCA's Small Vehicle Exception.  Second, positions the collective took when it agreed to voluntarily dismiss the claims of some members who were not similarly situated to Seals will not judicially estop Seals from making his arguments here.

B.      Statute of Limitations

FedEx argues that it cannot be liable for any overtime Seals might be owed for periods earlier than two years before he joined the collective action, that is, before August 5, 2018. Earlier periods are beyond that default limitations period, and FedEx argues there are insufficient facts to support a three-year limitations period for a willful violation.  It argues that the ISPs issued Seals's paychecks; the ISPs promised FedEx it would comply with the wage and hour laws and annually certified it was complying; and Seals never complained to FedEx about not getting paid overtime wages.  It further argues that Seals is not entitled to equitable tolling because he was not diligent in asserting his rights despite an earlier tolling order.

Seals argues it is premature for the Court to determine whether the two- or three-year limitations period applies before the jury finds that there is a violation of the FLSA and that FedEx is Seals's joint employer with the ISPs.  In this regard, Seals expects his evidence at trial to show that FedEx masterminded the ISP model in a deliberate attempt to do an end-run around the FLSA's overtime requirements while still retaining the authority to exert broad control over the driver-employees of the ISPs, including monitoring ISPs' wage and hour compliance and maintaining scanner data.

1.      Length of Limitations Period

The statute of limitations for a non-willful FLSA violation is two years and for a willful violation, three.  29 U.S.C. § 255(a).  The cause of action of a collective action member not named in the complaint is considered commenced when their written notice of consent is filed in the Court.  29 U.S.C. § 256(b).  It is clear that "[a] cause of action for overtime pay accrues when the employee received less than required by FLSA, regardless of whether the employee has completed a qualitative assessment that a viable claim might be pursued."  *McColley v. Casey's*

15

*Gen. Stores, Inc.*, 627 F. Supp. 3d 972, 981 (N.D. Ind. 2022).  A violation is considered willful

where the defendant "either knew or showed reckless disregard for the matter of whether its

conduct was prohibited by the statute."  *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133

(1988) (citing *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 125-130 (1985)).  It is the

plaintiff's burden to show that a violation was willful.  *Bankston v. State of Ill.*, 60 F.3d 1249,

1253 (7th Cir. 1995).  That question should be left to a jury where there is evidence of

willfulness, *id.*, but if there is no such evidence, the Court may grant summary judgment on the

question.

Even though the ISPs paid Seals and promised FedEx it was doing so in compliance with

applicable laws, and even though Seals never complained to FedEx about his wages, the

evidence shows that FedEx had access to and regularly reviewed the scanner data.  That data

shows that Seals was "on duty" more than 40 hours in some weeks and was driving light vehicles

at least some of the time.  A reasonable jury could find from this evidence that FedEx was on

notice that Seals was working more than 40 hours without overtime pay in violation of the

FLSA.  The jury could find that this amounted to at least reckless disregard for Seals's rights

under the FLSA because FedEx failed to investigate further to ensure compliance with the

statute.  Thus, the Court must leave the factual disputes over the question of willfulness to the

jury.[4]

---

[4] Although in its reply filings FedEx asserts it is not moving for summary judgment on the issue
of whether it is a joint employer with the ISPs, *see, e.g.* FedEx's Response to Plaintiff Willie
Seals' Responsive Concise Statement of Facts ¶ 8 (Doc. 13), it asserts with regard to willfulness
that it is not a joint employer so it cannot be accountable for any failure of an ISP to comply with
the FLSA.  Based on its disclaimer of the argument at the summary judgment stage, the Court
declines to decide whether FedEx is a joint employer and will leave that question for the jury.

### 2.    Equitable Tolling

Equitable tolling is extended sparingly and only where claimants exercise diligence in preserving their legal rights. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990) (citing *Baldwin Cnty. Welcome Ctr. v. Brown,* 466 U.S. 147, 151 (1984)).  A litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wisc. v. United States*, 577 U.S. 250, 255-56 (2016) (internal quotations omitted).  The extraordinary circumstance must be an external obstacle to timely filing that was beyond the litigant's control. *Id.* at 256-57.  Further, the analysis of whether to apply equitable tolling should focus on fairness to both parties. *See Irwin*, 498 U.S. 89.

The District Court for the Western District of Pennsylvania equitably tolled the statute of limitations beginning November 27, 2018, for potential opt-in (of which Seals was one) during the period for sending notice of the collective action. *Claiborne v. FedEx Ground Package Sys., Inc.*, No. 18-cv-1698, 2019 WL 4750141, at *6 (W.D. Pa. Sept. 30, 2019).  Accordingly, it gave collective action notice to drivers who had been employed to pick up and deliver FedEx packages beginning November 27, 2015, accounting for the possibility that the three-year limitation period applied. *Id.*

FedEx argues that this order does not apply to Seals's individual claim, which must depend on his own diligence in pursuing his rights.  That determination, it argues, requires an individualized inquiry and cannot be made at the preliminary stage of a collective action.  And that inquiry as applied to Seals does not show diligence, FedEx claims.  Further, in its reply brief, it argues that the Western District of Pennsylvania court did not have jurisdiction over Seals, who had not yet opted in to the case, when it entered its tolling order.  Seals argues that

17

the Western District of Pennsylvania court's tolling order applies as the "law of the case."

As for FedEx's jurisdiction argument, it raises that argument for the first time in its reply brief. It has long been established that arguments in support of the motion that are raised for the first time in a reply brief are waived. *Wright v. United States*, 139 F.3d 551, 553 (7th Cir. 1998). This is because the opposing party does not have an opportunity to respond to the new arguments in the reply brief. *See Kauthar SDN BHD v. Sternberg*, 149 F.3d 659, 668 (7th Cir. 1998).

As for the merits of the equitable estoppel argument, while it is true that some courts treat equitable tolling as an individual decision not appropriate at the certification stage, *see, e.g., Joyce v. Colter Energy Servs. USA, Inc.*, No. 2:22CV1367, 2024 WL 2794278, at *5 (W.D. Pa. May 31, 2024), the court in the Western District of Pennsylvania did not, and that is the law of the case. The law of the case is a discretionary doctrine that creates a presumption against reopening matters already decided in the same litigation and authorizes reconsideration only for a compelling reason such as, for example, a substantial manifest error or a change in the law that reveals the prior ruling was erroneous. *Pittman ex. rel Hamilton v. Madison Cnty.*, 108 F.4th 563, 572 (7th Cir. 2024) (declining to apply doctrine), *cert. denied*, 145 S. Ct. 1154 (2025); *United States v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008); *Minch v. City of Chi.*, 486 F.3d 294, 301 (7th Cir. 2007).

FedEx has offered no compelling reason to reconsider the Western District of Pennsylvania court's tolling order. To the extent the Western District of Pennsylvania court did not have jurisdiction to equitably toll the statute of limitations for Seals, the Court finds there are disputed issues of fact regarding whether Seals diligently asserted his rights and the impact of the twisted procedural history of this case on that diligence. Those disputes could be resolved in a way that would justify an identical tolling order now considering the equities and complicated

18

procedural history of this litigation.  Such tolling would potentially bring all of Seals's

employment picking up and delivering FedEx packages within the statute of limitations whether

it is two or three years.

       C.        <u>Damage Calculation</u>

As noted above, the FLSA requires overtime pay for any employee who works more than

40 hours in a workweek "at a rate not less than one and one-half times the regular rate at which

he is employed."  29 U.S.C. § 207(a)(1).  The parties dispute how to calculate Seals's "regular

rate" per hour, which, in turn, is the touchstone to determine the amount of overtime pay owed

for each week.  *See Urnikis-Negro v. Am. Fam. Prop. Servs.*, 616 F.3d 665, 673 (7th Cir. 2010).

Federal regulations provide, "The regular hourly rate of pay of an employee is

determined by dividing his total remuneration for employment (except statutory exclusions) in

any workweek by the total number of *hours actually worked by him* in that workweek for which

such compensation was paid."  29 C.F.R. § 778.109 (emphasis added).  Where an employee is

paid an hourly rate for the workweek, one and one-half times that rate is fairly simple to

calculate:  hourly rate x 1.5 = overtime hourly rate.  The employee will then be paid the regular

rate for the total hours worked plus one-half the regular rate for hours worked beyond 40 hours.

*See* 29 C.F.R. § 778.110.

> However, where, as here, the worker is paid a daily rate, the calculation is a little harder:
>
> If the employee is paid a flat sum for a day's work . . . *without regard to the number of hours worked* in the day or at the job . . ., his *regular rate is determined by totaling all the sums received at such day rates . . . in the workweek and dividing by the total hours actually worked*.  He is then entitled *to extra half-time pay at this rate for all hours worked in excess of 40* in the workweek.

29 C.F.R. § 778.112 (emphasis added).  It is clear that the relevant unit of time for which

overtime should be determined is the week.  *Urnikis-Negro*, 616 F.3d at 673.

FedEx takes the position that, for each week Seals worked, the total amount of pay he received that week—that is, the total of all the $125.00 daily wages—must be divided by the total number of hours he actually worked that week to reach his "regular rate" for that week.  He would then be owed, in addition to $125.00 per day, one half times the "regular rate" for each hour he worked over 40 hours that week.

Seals contends that the total amount of pay he received in a week should be divided by 40 hours to arrive at his "regular rate" because FedEx cannot show the flat $125.00 was intended to cover more than 40 hours per week.[5]  It believes that, for the purposes of calculating the "regular rate" of pay, a flat weekly rate is presumed to cover only the first 40 hours, and the defendant bears the burden of showing that rate was intended to include overtime hours such that the total should be divided by all hours worked in that week.

Seals relies on the federal rule, and caselaw implementing it, relating to workers who receive a salary for a period of a week or longer.  The regular wage of such workers is determined by "dividing the salary by the number of hours which the salary *is intended to compensate*."  29 C.F.R. § 778.113(a); *see Urnikis-Negro*, 616 F.3d at 673; *Reich v. Homier Distrib. Co.*, No. 1:04-cv-415, 2005 WL 3299141, at *1 (N.D. Ind. July 12, 2005).  This rule does not apply to workers paid at a daily rate whose "regular rate" is governed by 29 C.F.R. § 778.112.  *See Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945) (piecework).

Seals argues that, although 29 C.F.R. § 778.112 does not use the word "intended," intent is relevant because the rule is limited to those paid daily wages "without regard to the number of hours worked."  *See Cunningham v. Faerber's Bee Window, Inc.*, No. 1:04-cv-500, 2005 WL

---

[5] Clearly it was not; the $125.00 was only covered a day's labor.

1123634, at *4 (S.D. Ind. Apr. 19, 2005) (some evidence that worker understood daily rate to cover only eight hours so it was not "without regard to the number of hours worked"). He reads this to mean that if the wage were paid *with* regard for the number of hours worked, that is, if it were intended to cover only eight hours, the weekly wage rule should apply. 29 C.F.R. § 778.113(a).

The Court is hesitant to adopt this interpretation. The phrase "without regard to the number of hours worked" is intended to distinguish workers paid by the day from those paid by the hour, the week, or longer. The phrase does not qualify different types of day laborers, and it does not then shunt some of them to 29 C.F.R. § 778.113(a), which by its terms clearly applies only to workers who receive a weekly wage. The Court is not persuaded by Seals's argument that the trailing words of 29 C.F.R. § 778.109—in the workweek "*for which such compensation was paid*"—require a different conclusion.

Further, even if this were the rule, there is no evidence in this case from which a reasonable jury could find that the $125.00 wage Seals received per day was intended to cover eight hours of work, no more, no less. In fact, the scanner data shows several dates on which Seals was "on duty" (presumably the maximum hours worked for the day) less than eight hours, yet he was still paid the regular day wages. This suggests his wage was "without regard to the number of hours worked."

Seals also argues that, because the scanner data does not show how many hours he worked in any workweek, that shortfall should be remedied by dividing his total weekly income by 40 hours. The remedy requested is not rationally related to the recordkeeping delinquency and is in direct contravention of the Department of Labor's FLSA regulations. The Court rejects it.

The Court will grant summary judgment for FedEx on this issue.  Damages must be calculated in accordance with 29 C.F.R. § 778.112.[6]

D.    Miscellaneous Matters

1.    Sealing Exhibit H

Seals moves to maintain under seal Exhibit H to its response to the summary judgment motion (Doc. 40).  He has already filed the motion under seal (Doc. 41).  FedEx does not oppose the motion, although it believes the exhibit is irrelevant (Doc. 46).  The Court will grant the motion and will maintain Exhibit H (Doc. 41) under seal.

2.    Motion for Oral Argument on Summary Judgment Motion

FedEx asks for oral argument on its summary judgment motion (Doc. 49).  The Court does not find oral argument necessary and has, in fact, decided the motion without it.  Accordingly, the Court will deny the motion.

3.    Motion for Oral Argument on Motion to Strike Witnesses

FedEx asks for oral argument on Seals's motion to strike witnesses Jack Van Steenburg and Daniel F. Spulber (Doc. 43).  The Court will grant the motion.  It has already set oral argument on this motion by separate order for June 29, 2026.

4.    Trial Briefs

As the Trial Briefs (Docs. 72 & 77) were submitted before the May 19, 2026, hearing and

---

[6] So, for example, if Seals worked five 10-hour days (50 hours total) in one week, his "regular rate" would be $12.50 per hour ($625.00 in total wages ÷ 50 hours actually worked).  He would be entitled to $625.00 in regular wages plus $62.50 in additional overtime wages ($12.50 x 0.5 x 10 hours worked beyond 40 hours) for a total of $687.50.  But if he worked four 12.5-hour days (50 hours total) in one week, his "regular rate" would be $10.00 ($500.00 in total wages ÷ 50 hours actually worked).  He would be entitled to $500.00 in regular wages plus $50.00 in additional overtime wages ($10.00 x 0.5 x 10 hours worked beyond 40 hours) for a total of $550.00.

before this summary judgment ruling, they are outdated.  The Court will therefore strike them

and allow the submission of updated Trial Briefs before the Final Pretrial Conference, currently

scheduled for July 14, 2026.  A brief shall not exceed 20 pages and shall focus on particularly

difficult questions the Court will face at trial.  *See* Senior Judge J. Phil Gilbert Case Management

Procedures 5 (Jan. 2020), https://www.ilsd.uscourts.gov/content/senior-judge-j-phil-gilbert.

Relief sought from the Court before trial regarding trial matters shall be presented by

motion rather than contained in a Trial Brief.  Motions in limine must be filed seven days before

the Final Pretrial Conference; responses shall be filed the day before the Final Pretrial

Conference.  The parties must attempt to work out evidentiary dispute between themselves

before presenting them to the Court in a motion.  The failure to do so will be grounds for denying

the relief sought in the motion.

## V.    Conclusion

For the foregoing reasons, the Court:

- **GRANTS in part** and **DENIES in part** FedEx's summary judgment motion (Doc. 2);
  - The motion is **GRANTED** to the extent FedEx seeks to establish the proper method for calculating Seals's damages, if any; and
  - The motion is **DENIED** in all other respects;

- **GRANTS** Seals's motion for leave to file supplemental authority (Doc. 78).  The Court has considered that authority as well as FedEx's response (Doc. 81);

- **GRANTS** Seals's motion to maintain Exhibit H under seal (Doc. 40);

- **DENIES** FedEx's motion for oral argument on its summary judgment motion (Doc. 49);

- **GRANTS** FedEx's motion for oral argument on Seals's motion to strike witnesses (Doc. 43) and has scheduled the oral argument for June 29, 2026; and

- **STRIKES** the Trial Briefs (Docs 72 & 77) with leave to refile.

One final word is in order.  At the May 19, 2026, telephone hearing, Seals indicated his

compensatory damages were in the neighborhood of $15,000 with liquidated damages therefore

23

around $30,000.  That puts the amount in issue at trial around $45,000 assuming Seals wins on everything.  The Court has no doubt that it will cost much more than that to try this case.  The Court further doubts the attorneys fees that it would award on a plaintiff's victory would make this case worth a trial.  The Court strongly encourages the parties to consider settling this case before resources are unnecessarily expended.

**IT IS SO ORDERED.**
**DATED:  June 1, 2026**

**J. PHIL GILBERT**
**DISTRICT JUDGE**